IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| OZMO LICENSING LLC,<br>　　　　*Plaintiff,* | § § § § | |
| -v- | § § | 6:23-CV-00249-ADA |
| TCL ELECTRONICS HOLDINGS LTD. F/K/A TCL MULTIMEDIA TECHNOLOGY HOLDINGS, LTD., TCL INDUSTRIES HOLDINGS CO., LTD.,<br>　　　　*Defendants.* | § § § § § § § § | |

## CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendants TCL Electronics Holdings Ltd. f/k/a TCL Multimedia Technology Holdings, Ltd. and TCL Industries Holdings Co., Ltd.'s Opening and Reply briefs (ECF Nos. 27 and 30, respectively) and Plaintiff Ozmo Licensing LLC's Response and Sur-Reply briefs (ECF Nos. 28 and 33, respectively). The Court provided preliminary constructions for the disputed terms one day before the hearing. The Court held the *Markman* hearing on March 26, 2024. ECF No. 40. During that hearing, the Court informed the Parties of the final construction for the disputed term. *Id.* This Order does not alter any of those constructions.

### I.    DESCRIPTION OF THE ASSERTED PATENTS

Plaintiff asserts U.S. Patent Nos. 8,599,814, 9,264,991, 10,873,906, 11,012,934, and 11,122,504, which are all entitled "Apparatus and method for integrating short-range wireless personal area networks for a wireless local area network infrastructure." All patents share a common specification. Opening at 2 n.3.

1

The patents describe that prior to the asserted patents, integrating (1) a wireless local area network ("WLAN") (*e.g.*, IEEE Std. 802.11, *i.e.*, Wi-Fi) and (2) a wireless personal area network ("WPAN") (*e.g.*, IEEE Std. 802.15.1 and 802.15.4, *i.e.*, Bluetooth and Zigbee, respectively) was problematic because "several WPAN communication protocols co-exist in the same 2.4-GHz frequency band as a commonly used version of the WLAN protocol." '814 Patent at 2:37–39. The patents further explain that "[b]ecause they use different methods of accessing the wireless medium, and are not synchronized with one another, severe interference may result when devices conforming to such standards are made to co-exist and are positioned in the same physical vicinity." *Id.* at 2:39–44.

The patents further describe that using "network interface circuitry based on the WLAN protocol in WPAN STAs" is a sub-optimal solution as WLAN and WPAN devices have different power and performance requirements. *Id.* at 2:45–3:28. More specifically, the power dissipation in WLAN network interface circuitry is orders of magnitude higher as compared to WPAN network interface circuitry because, *inter alia*, WLAN devices require using a higher transmit power in order to transmit over longer distances, while WPAN devices have a much smaller range and are typically battery-powered and thus need to have minimal power dissipation. *Id.* at 2:45–3:3. Furthermore, WLAN devices have very high data speeds, whereas WPAN devices do not given that higher transmit speeds come at the cost of higher power dissipation. *Id.* at 3:3–21.

Figure 3 depicts an embodiment of the claimed invention. The patents disclose wireless hub 12 that can connect to two wireless networks, WLAN 6 and WPAN 10. *Id.* at 3:37–42. More specifically, wireless hub 12 connects PS-STA 11, which is a device in WPAN 10, to IEEE 802.11 access point 7 in the WLAN 6, which is in turn connected to the internet. *Id.* at 4:55–5:10, 5:43–47. Therefore, by using wireless hub 12, PS-STA 11 can communicate with the internet.



FIG. 3

The patents teach that "[c]oordination is achieved by the use of a secondary network (WPAN) protocol that is an overlay protocol that is partially compatible with the WLAN protocol, but not entirely, in terms of power, frame contents and sequences, timing, etc." *Id.* at 10:1–5.

## II. LEGAL STANDARD

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361

(Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

## III.   LEGAL ANALYSIS

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "overlay protocol"<br><br>U.S. Patent Nos. 8,599,814; 9,264,991; 10,873,906; 11,012,934; and 11,122,504 | "a protocol governing a second network, which protocol has aspects in common with a first network protocol to reduce interference such that the second and first networks can co-exist" | "a second protocol that has elements that are reuses of elements of a first protocol to provide one or more advantages" |

**The Parties' Positions:**

The parties have two disputes with respect to this term: whether (1) the patentee acted as their own lexicographer in a prior patent application (U.S. Patent Application No. 11/376,753, which issued as U.S. Patent No. 9,036,613, hereinafter "Vleugels I") that was incorporated into the Asserted Patents and (2) "to reduce interference such that the second and first networks can co-exist" or recited advantages should be included in the Court's final construction.

### A. Whether the patentee acted as their own lexicographer

This Court previously construed this term in two prior cases. *Ozmo Licensing LLC v. Acer Inc.*, No. 6:21-CV-1225-ADA, ECF No. 36 at 23–26 (W.D. Tex. Sept. 2, 2022); *Ozmo Licensing LLC v. Dell Techs. Inc.*, No. 1:23-cv-00747-ADA, ECF No. 60 at 6 (W.D. Tex. Jul. 5, 2023). In the prior cases, neither Acer nor Dell asserted lexicography. See, *Acer*, No. 6:21-CV-1225-ADA, ECF No. 36 at 23–26; *Dell*, No. 1:23-cv-00747-ADA, ECF No. 32 at 13–16. Rather, in both cases, this Court adopted Plaintiff's proposed construction, which is the same as Plaintiff proposes in this case. *Acer*, No. 6:21-CV-1225-ADA, ECF No. 36 at 23–26; *Dell*, No. 1:23-cv-00747-ADA, ECF No. 60 at 6.

Defendant contends that the patentee acted as their own lexicographer in Vleugels I when it stated that:

> As used herein, an overlay protocol is an SWN protocol that has elements that are reuses of elements of a PWN protocol to provide one or more advantages, such as ability to use some common hardware components for both networks, the ability to communicate in the SWN without having to disassociate with the PWN, the ability to signal in the SWN with signals that are understood by SWN devices but are such that they are, if not understood, are acted upon by PWN devices to provide desirable actions.

Opening at 5 (Vleugels I (U.S. Patent No. 9,036,613) at 9:38–47). Defendant contends that the patentee acted as their own lexicographer in this passage by introducing "overlay protocol" using the words "as used herein." *Id.* (citing cases).

Defendant contends that Plaintiff in the prior *Acer* case argued that Vleugels I defined this term. *Id.* at 6 (citing *Acer*, No. 6:21-CV-1225-ADA, ECF No. 32 at 7 (W.D. Tex. Aug. 12, 2022)). Defendant further contends that the Court in the prior *Acer* case also concluded that Vleugels I defined "overlay protocol." *Id.* (*Acer*, No. 6:21-CV-1225-ADA, ECF No. 36 at 25).

Defendant contends that its proposed construction differs from this definition in two minor ways: (1) it replaces "SWN protocol" and "PWN protocol" ("[secondary/primary] wireless network") with "first" and "second" protocol, respectively, in order to match the claim language, and (2) omits the purposed examples as they are non-limiting examples. *Id.* at 6–7.

In its response, Plaintiff contends that the Court construed this term in both the *Acer* and *Dell* cases and adopted a construction which is the same as what Plaintiff proposes in this case. Response at 4. Plaintiff contends that "[t]he mere fact that the patentee introduced an 'overlay protocol' using '[a]s used herein" does not rise to the standard of "clearly set[ting] forth a definition of the disputed term" and "clearly express an intent" to define the term. *Id.* at 5. Plaintiff contends that the cases Defendant cites "found lexicography in limited circumstances where the phrase at issue was not challenged or addressed elsewhere in the intrinsic record, or where there was additional evidence that the patentee clearly expressed an intent to define the term." *Id.* at 5–6 (citing cases). Plaintiff further contends that "[t]he disclosure cited by TCL, when read in the context of the entire intrinsic record, makes clear that the inventors did not intend to define an overlay protocol as TCL has proposed." *Id.* at 6.

7

Plaintiff contends that Defendant's proposed construction "fails to adhere to such alleged express definition[,]" but rather modifies the term (as Dell had done) by changing the alleged definition and omitting the listed advantages. *Id.*

In its reply, Defendant contends that Acer did not propose the same construction Defendant does in this case. Reply at 1 (citing *Acer*, No. 6:21-CV-1225-ADA, ECF No. 26 at 11–13). Defendant contends that while Dell did propose the same construction, it did not argue lexicography. *Id.* at 2 (citing *Dell*, No. 1:23-cv-00747-ADA, ECF No. 32 at 13–16). Defendant contends that it cited to many cases where courts found "as used herein" was found to be lexicographical and that both Dell and the Court in the *Dell* case did not cite or address these cases. *Id.* at 1, 3.

Defendant contends that Plaintiff admitted that the patentee acted as their own lexicographer in the prior *Acer* case. *Id.* at 4 (citing *Acer*, No. 6:21-CV-1225-ADA, ECF No. 32 at 7). Defendant also contends that the Court, in the *Acer* case, agreed with Plaintiff that the patentee acted as their own lexicographer. *Id.* (citing *Acer*, No. 6:21-CV-1225-ADA, ECF No. 36 at 25).

Defendant contends that the use of additional evidence to support the Court's construction in a prior case does not negate the Court's statement that "the phrase '[a]s used herein' indicates that the patentee intended to define the meaning." *Id.*

In its sur-reply, Plaintiff contends that the Court did analyze the alleged lexicographical statement in the *Acer* case. Sur-Reply at 2–3 (citing *Ozmo Licensing LLC v. Acer Inc.*, No. 6:21-CV-1225-ADA, ECF No. 36 at 25). Plaintiff contends that rather than concluding that the patentee acted as their own lexicographer, "the Court examined the entire intrinsic record to determine the

8

proper construction of this term in the context of *all* the claims and specifications from the five patents-in-suit." *Id.* at 3 (emphasis in Plaintiff's brief).

Plaintiff contends that Defendant's analysis "artificially and inappropriately begins and ends with the phrase 'as used herein.'" *Id.* Plaintiff contends that this does not meet the "legal requirements" for lexicography because alleged lexicography must "appear 'with reasonable clarity, deliberateness, and precision' before it can affect the claim." *Id.* (*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) (quoting *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994))).

Plaintiff contends that the statement in Vleugels I is not "clear and precise" because it "does not even describe which elements are reuse[d]" and because failure to include the advantages recited in that statement renders the definition to be "incomplete." *Id.* at 4.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Defendant that the patentee acted as their own lexicographer with respect to "overlay protocol."

All asserted patents incorporate the Vleugels I reference. '814 Patent at 1:18–21, '991 Patent at 1:10–13, '906 Patent at 1:26–30, '934 Patent at 1:29–32, '504 Patent at 1:32–36. The Vleugels I reference describes "overlay protocol" as follows:

> As used herein, an overlay protocol is an SWN protocol that has elements that are reuses of elements of a PWN protocol to provide one or more advantages, such as ability to use some common hardware components for both networks, the ability to communicate in the SWN without having to disassociate with the PWN, the ability to signal in the SWN with signals that are understood by SWN devices but are such that they are, if not understood, are acted upon by PWN devices to provide desirable actions.

Vleugels I (U.S. Patent No. 9,036,613) at 9:39–47.  The Court concludes that this statement meets the "exacting" standard required for a finding of lexicography.  *Hill-Rom Servs.*, 755 F.3d at 1371 ("The standards for finding lexicography and disavowal are exacting.").  More specifically, as described above, "[t]o act as its own lexicographer, a patentee must [1] clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must [2] "clearly express an intent to redefine the term."  *Id.* (annotations added).  With respect to the former, the Court concludes that the patentee provided a clear definition for this term by reciting the term ("an overlay protocol"), followed by "is" and the patentee's definition ("an SWN protocol that has elements that are reuses of elements of a PWN protocol.").

Plaintiff argues that this definition is not "clear and precise" because it "does not even describe which elements are reuse[d]" and because failure to include the advantages recited in that statement renders the definition to be "incomplete."  Sur-Reply at 4.  With respect to the first argument, the Court disagrees that omitting which elements are reused indicates that the definition is not "clear and precise."  Rather than making the definition to be not "clear and precise," omitting which elements are reused indicates broadens the claim by allowing the full range of components in the PWN protocol to be reused.  Furthermore, including which elements need to be reused would not add any additional clarity to this definition as the definition already makes clear that components in the PWN protocol are reused in the SWN protocol.

With respect to Plaintiff's second argument, omitting the advantages of the "overlay protocol" does not necessarily make the definition thereof to be incomplete, as the including the advantages only describes what benefits there are in using an "overlay protocol."  That said, for the reasons described below, the Court includes these advantages in its final construction.

With respect to intent, the Court concludes that the use of the words "as used herein" demonstrate the patentee's intent to define the term. *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1023 (Fed. Cir. 2017) ("It is well recognized that a patentee may set out a definition of a term and act as his own lexicographer. The … patent do[es] so explicitly, beginning the definition of 'amide' with the phrase '[a]s used herein.'"). *Int'l Bus. Machs.*, No. 6:22-CV-00299-ADA, ECF No. 90 at 12 ("the Court finds that the use of the phrase "[a]s used herein" indicates that the patentee intended to define the meaning.").

Plaintiff argues that *Int'l Bus. Machs.* is distinguishable because there is no "additional evidence that the patentee clearly expressed an intent to define the term" in this case. Response at 5–6. But this Court in *Int'l Bus. Machs.* did not hold that additional evidence was necessary for the Court to conclude that the patentee acted as their own lexicographer. *Int'l Bus. Machs.*, No. 6:22-CV-00299-ADA, ECF No. 90 at 12. Rather, this Court held that the specification's "use of 'there is a distinction between…' is ***additional evidence*** that the patentee intended to define the meaning of these terms." *Id.* (emphasis added). In other words, this Court concluded in that case that—standing alone—the sentence containing "as used herein" met the "exacting" requirements necessary for a finding of lexicography, but that the sentence containing "there is a distinction between" provided ***additional, supporting evidence*** that further confirmed that conclusion. *Id.*

Plaintiff further argues that, based on the following, the patentee did not act as their own lexicographer:

> The disclosure cited by [Defendant], when read in the context of the entire intrinsic record, makes clear that the inventors did not intend to define an overlay protocol as [Defendant] has proposed. Rather, the intrinsic record makes it clear that the "overlay protocol" has two aspects: first, it reuses certain elements of another protocol and is therefore an "overlay" protocol according to the conventional, plain-and-ordinary meaning of the term "overlay." Second, the overlay protocol enables co-existence of two different networks, e.g., a WLAN and a WPAN, even though both networks may use the same channels or portions of a frequency spectrum.

11

Response at 6. But Plaintiff's argument does not explain why the "as used herein" passage is ***not*** lexicography. Furthermore, accepting Plaintiff's argument as true, both aspects of Plaintiff's argument are not necessarily inconsistent with or excluded by the patentee's lexicography. As such, the Court concludes that Plaintiff has not pointed to anything in the intrinsic record that is inconsistent with or excluded by the alleged lexicographical statement that would cause the Court to reevaluate whether the disputed passage is lexicography.

With respect to the Court's decision in the prior *Acer* and *Dell* cases, because neither party in those cases asserted that the patentee acted as their own lexicographer,[1] the Court's final construction was not based on lexicography. But in this case, the parties dispute whether the patentee acted as their own lexicographer, so the Court, for the first time, needs to resolve that dispute, and change its construction from the prior cases if necessary.

Finally, to help the jury and conform the lexicography to the claim language, the Court replaces the acronym "SWN" in the lexicographical statement with "second wireless network" and the acronym "PWN" with "first wireless network" in the Court's final construction. *i.e.*, "a second wireless network protocol that has elements that are reuses of elements of a first wireless network protocol."

### B. Whether "to reduce interference such that the second and first networks can co-exist" or recited advantages should be included in the Court's final construction

Defendant contends that Plaintiff improperly imports a limitation ("to reduce interference such that the second and first networks can co-exist") from the specification that excludes some

---

[1] In the *Acer* case, Plaintiff argued that "'[o]verlay procotol' was defined in Vleugels I[.]" *Acer*, No. 6:21-CV-1225-ADA, ECF No. 32 at 7 (W.D. Tex. Aug. 8, 2022). But, despite that assertion, Plaintiff in the *Acer* case proposed a construction that was not based on the alleged lexicographical statement. *See, e.g., id.* Therefore, it does not appear that Plaintiff actually asserted lexicography in the *Acer* case. The Court inadvertently used language from Plaintiff's brief in its Claim Construction Order when it wrote that "'[o]verlay protocol' is defined in Vleugels I[.]" *Acer*, No. 6:21-CV-1225-ADA, ECF No. 36 at 25.

embodiments as that is "only one feature among many that Vleugels I discloses in the specification's myriad embodiments." Opening at 6. Defendant contends that "[i]nterference reduction is, at most, a feature particular to certain embodiments disclosed by Vleugels I, and not a feature intrinsic to an 'overlay protocol' itself." *Id.* at 7.

In its response, Plaintiff contends that the Court in the *Acer* case "found that the contextual use of the term across all five patents-in-suit indicated that an overlay protocol is one that shares some commonality with another protocol but enables reduced interference and protocol co-existence." Response at 4. Plaintiff contends that, based on passages in Vleugels I and the '814 Patent, the Court denied Acer's construction "because it failed to address reduced interference and protocol co-existence discussed in the common specification." *Id.* at 5 (citing *Ace*, No. 6:21-CV-1225-ADA, ECF No. 36 at 25).

With respect to Defendant's argument that Plaintiff's proposed construction improperly excludes some embodiments, Plaintiff contends that "it is well established that patent claims need not be–and often are not–interpreted to include every disclosed embodiment." *Id.* (citing cases).

Plaintiff contends that "the co-existence of two networks may be facilitated by minimizing collision of signals from the two networks, which can be accomplished by minimizing simultaneous contentions for the wireless medium." *Id.* at 7 (citing '991 Patent at 11:44–50, 12:12–32; U.S. Provisional Pat. App. No. 60/661,746 at p. 10, ll. 9-12, p. 13, ll. 5-11).

In its reply, Defendant contends that it does not argue that "each patent claim must be interpreted to include every disclosed embodiment." Reply at 3. Defendant contends that Plaintiff's proposed construction requires "a particular benefit (interference reduction) that is explicitly not required patentee's express definition" and that it simultaneously "excludes the three

13

explicitly listed embodiments from the definition of 'overlay protocol' as none of those listed require interference reduction." *Id.*

Based on that, Defendant contends that Plaintiff is committing "patent law's cardinal sin by reading in a limitation requiring interference reduction between the two protocols." *Id.* at 5 (citing cases). Defendant contends that Plaintiff's justification that this limitation is necessary (because the asserted patents emphasize minimizing signal collision between the two networks) is lacking because "such an emphasis does not establish that interference reduction is inherent to the term." *Id.* at 5–6. Furthermore, Defendant contends that "[o]verlaying one protocol onto another does not automatically reduce interference between the two, and a protocol is no less an overlay protocol if fails to reduce interference." *Id.* at 6.

Defendant finally contends that it "does not think it is necessary to include the examples [described in Vleugels I] because they do not limit the scope of the term," but Defendant "is willing to include these advantages in its definition, as well as the additional non-limiting example of interference reduction[.]" *Id.* at 4.

In its sur-reply, Plaintiff contends that Defendant improperly limits their analysis to the alleged lexicographical statement in Vleugels I. Sur-Reply at 5. Plaintiff contends that, by contrast, the specification "makes plain that one of the main objectives of the patents-in-suit is to facilitate co-existence of two wireless networks, a primary wireless network (PWN) and a secondary one (SWN)," each of which use different, independent protocols. *Id.* (citing '814 Patent at 2:63–4:15). Plaintiff contends that while this would make a hub that could operate in either network to be complex and costly, the claimed invention avoids this problem by "employing an SWN protocol that is an overlay protocol as to the PWN protocol, so that the two protocols can use some common circuitry. *Id.* (citing '814 Patent at 9:3–11, Vleugels I at ¶ [0061]). Plaintiff

contends that because the two networks may interfere with each other, the overlay protocol is designed to reduce interference and the two networks to co-exist efficiently "when the protocol for one of the networks, i.e., the 'overlay protocol' has common aspects with respect to the protocol for the other network, and can reduce interference between the two networks." *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Defendant that interference reduction is not a feature intrinsic to the claimed "overlay protocol" and all examples should be included in the construction of this term. With respect to the former, the Court concludes that requiring that an "overlay protocol" reduces interference improperly excludes embodiments that do not reduce interference. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification … where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary."). Plaintiff does not appear to provide probative evidence to the contrary that these embodiments should be excluded.

With respect to the dispute whether the advantages listed in Vleugels I should be included in the final construction, the Court concludes that they should be for the reasons that follow. **First**, Vleugels I expressly recites that the use of an "overlay protocol" has several exemplary advantages. *Id*. **Second**, the Court believes that listing the exemplary advantages could help a jury understand the relationship between the various elements described in the rest of the construction, *e.g.*, first and second wireless network protocol. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("The district court simply must give the jury guidance that

can be understood and given effect by the jury once it resolves the issues of fact which are in dispute.").

Based on that, the Court appends the following to the Court's final construction: "where in the advantages include, but are not limited to, the ability to use some common hardware components for both networks, the ability to communicate in the second wireless network without having to disassociate with the first wireless network, the ability to signal in the second wireless network with signals that are understood by second wireless network devices but are such that they are, if not understood, are acted upon by first wireless network devices to provide desirable actions, *etc.*"

## IV. CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below construction as its final construction for "overlay protocol."

**SIGNED** this 13th day of May, 2024.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| "overlay protocol"<br><br>U.S. Patent Nos. 8,599,814; 9,264,991; 10,873,906; 11,012,934; and 11,122,504 | "a protocol governing a second network, which protocol has aspects in common with a first network protocol to reduce interference such that the second and first networks can co-exist" | "a second protocol that has elements that are reuses of elements of a first protocol to provide one or more advantages" | "a second wireless network protocol that has elements that are reuses of elements of a first wireless network protocol to provide one or more advantages, *e.g.*, ability to use some common hardware components for both networks, the ability to communicate in the second wireless network without having to disassociate with the first wireless network, the ability to signal in the second wireless network with signals that are understood by second wireless network devices but are such that they are, if not understood, are acted upon by first wireless network devices to provide desirable actions, *etc.*" |