## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| OZMO LICENSING LLC, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) ) | |
| | ) | Case No. 6:23-cv-249-ADA |
| vs. | ) | |
| | ) | |
| TCL ELECTRONICS HOLDINGS LTD. and | ) | |
| TCL INDUSTRIES HOLDINGS CO., LTD., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants and Counterclaim-Plaintiffs. | ) ) | ██████████████ |
| | ) | **PUBLIC REDACTED VERSION** |
| | ) | |
| | ) | |

## TCL'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF OZMO LICENSING LLC'S COMPLAINT

Defendants TCL Electronics Holdings Ltd. and TCL Industries Holdings Co., Ltd., (collectively, "TCL" or the "TCL Defendants") files its First Amended Answer and Affirmative Defenses, and Counterclaims, to Plaintiff Ozmo Licensing LLC's ("Ozmo" or "Plaintiff") Complaint. TCL responds to the allegations contained in the numbered paragraphs of Ozmo's Complaint below. TCL denies all allegations in Ozmo's Complaint unless expressly admitted in the following paragraphs. To the extent the allegations in the Complaint refer to or rely on information not previously supplied to TCL, TCL lacks information sufficient to admit or deny such allegations and therefore denies them. The responses below reflect TCL's current knowledge. TCL reserves the right to further amend its positions and raise additional defenses as discovery proceeds and new information is acquired. Except as otherwise noted, the following headings and numbered paragraphs correspond to the headings and the numbered paragraphs set forth in the Complaint. TCL does not consider the headings or footnotes to headings to be allegations to which a response is necessary, does not admit the truth of any allegations contained in those headings or footnotes to those headings, and for the avoidance of any doubt, to the extent a response is necessary, TCL denies any allegations contained in those headings or footnotes to those headings.

## PARTIES

1.    On information and belief, TCL admits that Paragraph 1 of the Complaint purports to allege that Ozmo is a Texas limited liability company with its principal place of business at 1000 Heritage Center Circle, Suite 508, Round Rock, Texas 78664.

2.    TCL admits that TCL Electronics Holdings Limited is a limited liability company organized and existing under the laws of the Cayman Islands with a principal place of business located at 9 Floor, TCL Electronics Holdings Limited Building, TCL International E City, #1001 Zhongshan Park Road, Nanshan District, Shenzhen, Guangdong, 518067 P.R. China. TCL admits that TCL Electronics Holdings Limited also has a location at 7/F, TCL Building, 22 Science Park

E, Hong Kong Science Park, Shatin, New Territories, Hong Kong, S.A.R., and may be served pursuant to the terms of the Hague Convention. TCL denies the remaining allegations set forth in Paragraph 2.

3.   TCL admits that TCL Industries Holdings Co., Ltd. is a Chinese company and may be served pursuant to the terms of the Hague Convention. TCL denies the remaining allegations set forth in Paragraph 3.

4.   Denied.

5.   Denied.

6.   Denied.

## JURISDICTION AND VENUE

7.   TCL admits that this is a purported action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code. TCL further admits that this Court has subject matter jurisdiction over actions for alleged patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.   To the extent that the allegations of Paragraph 8 set forth legal conclusions, no response is required. TCL admits that Plaintiff purports to allege that this Court has personal jurisdiction over TCL. TCL does not contest personal jurisdiction before this Court for purposes of this case only.

9.   To the extent that the allegations of Paragraph 9 set forth legal conclusions, no response is required. TCL denies allegations set forth in Paragraph 9.

10. To the extent that the allegations of Paragraph 10 set forth legal conclusions, no response is required. TCL admits that Plaintiff purports to allege that venue is proper over TCL in this district. TCL does not contest venue before this Court for purposes of this case only.

2

## FACTUAL BACKGROUND

*The Patents-in-Suit*

11. TCL admits that the cover page of the '991 patent displays "Apparatus and Method for Integrating a Short-Range Wireless Personal Area Networks for a Wireless Local Area Network Infrastructure" as its title and indicates that the '991 patent issued on February 16, 2016. TCL denies the remaining allegations set forth in Paragraph 11.

12. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore denies them.

13. TCL admits that the cover page of the '906 patent displays "Apparatus and Method for Integrating a Short-Range Wireless Personal Area Networks for a Wireless Local Area Network Infrastructure" as its title and indicates that the '906 patent issued on December 22, 2020. TCL denies the remaining allegations set forth in Paragraph 13.

14. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies them.

15. TCL admits that the cover page of the '814 patent displays "Apparatus and Method for Integrating a Short-Range Wireless Personal Area Networks for a Wireless Local Area Network Infrastructure" as its title and indicates that the '814 patent issued on December 3, 2013. TCL denies the remaining allegations set forth in Paragraph 13.

16. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies them.

17. TCL admits that the cover page of the '934 patent displays "Apparatus and Method for Integrating a Short-Range Wireless Personal Area Networks for a Wireless Local Area Network Infrastructure" as its title and indicates that the '934 patent issued May 18, 2021. TCL denies the remaining allegations set forth in Paragraph 17.

18. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and therefore denies them.

19. TCL admits that the cover page of the '504 patent displays "Apparatus and Method for Integrating a Short-Range Wireless Personal Area Networks for a Wireless Local Area Network Infrastructure" as its title and indicates that the '504 patent issued September 14, 2021. TCL denies the remaining allegations set forth in Paragraph 19.

20. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies them.

*The Inventors, Ozmo Devices, and Ozmo Licensing*

21. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them.

22.  TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.

23. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies them.

24. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them.

*Wireless Communication Technology*

25. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them.

*Wireless Communication Technology*

26. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore denies them.

27. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies them.

28. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies them.

29. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies them.

30. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies them.

31. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies them.

32. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies them.

33. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore denies them.

34. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and therefore denies them.

35. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, and therefore denies them.

36. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and therefore denies them.

## COUNT I

(TCL Defendants' Alleged Infringement of U.S. Patent No. 9,264,991)

37. Paragraphs 1-36 of TCL's Answer are incorporated by reference as if set forth in full herein.

38. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and therefore denies them.

39. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39, and therefore denies them.

40. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and therefore denies them.

41. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41, and therefore denies them.

42. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and therefore denies them.

43. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore denies them.

44. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, and therefore denies them.

45. Denied.

46. TCL admits that the TCL 30 V 5G smartphone is a TCL product. TCL denies that any TCL products infringe the '991 patent and denies the remaining allegations in paragraph 46 of the Complaint.

47. TCL admits that this paragraph purports to reproduce claim 1 of the '991 patent. To the extent that there are any remaining allegations in this paragraph TCL denies them.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 67.

68. TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 68.

69. Denied.

70. Denied.

71. Denied.

## COUNT II

(TCL Defendants' Alleged Infringement of U.S. Patent No. 10,873,906)

72. TCL incorporates its responses to the preceding paragraphs 1-71 as if fully set forth herein.

73. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73, and therefore denies them.

74. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74, and therefore denies them.

75. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75, and therefore denies them.

76. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76, and therefore denies them.

77. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and therefore denies them.

78. TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78, and therefore denies them.

79. Denied.

80. TCL admits that the TCL products include certain TCL branded smartphones and smart televisions. TCL denies that any TCL products infringe the '906 patent and denies the remaining allegations in paragraph 80 of the Complaint.

81. TCL admits that this paragraph purports to reproduce claim 4 of the '906 patent. To the extent that there are any remaining allegations in this paragraph TCL denies them.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 106.

107.    Denied.

108.    TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 108.

109.    Denied.

110.    Denied.

111.    Denied.

**COUNT III**

(TCL Defendants' Alleged Infringement of U.S. Patent No. 8,599,814)

112.    TCL incorporates its responses to the preceding paragraphs 1-111 as if fully set forth herein.

113.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113, and therefore denies them.

114.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114, and therefore denies them.

115.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115, and therefore denies them.

116.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116, and therefore denies them.

117.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117, and therefore denies them.

118.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118, and therefore denies them.

119.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119, and therefore denies them.

120.    Denied.

121.    TCL admits that the TCL 30 V 5G smartphone is a TCL product. TCL denies that any TCL products infringe the '814 patent and denies the remaining allegations in paragraph 121 of the Complaint.

122.    TCL admits that this paragraph purports to reproduce claim 1 of the '814 patent. To the extent that there are any remaining allegations in this paragraph TCL denies them.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.    Denied.

141.    TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 141.

142.    TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 142.

143.    Denied.

144.    Denied.

145.    Denied.

146.    Denied.

## COUNT IV

### (TCL Defendants' Alleged Infringement of U.S. Patent No. 11,012,934)

147.    TCL incorporates its responses to the preceding paragraphs 1-146 as if fully set forth herein.

148.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148, and therefore denies them.

149.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149, and therefore denies them.

150.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150, and therefore denies them.

151.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151, and therefore denies them.

152.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152, and therefore denies them.

153.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153, and therefore denies them.

154.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154, and therefore denies them.

155.     TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155, and therefore denies them.

156.     Denied.

157.     TCL admits that the TCL products include certain TCL branded smartphones and smart televisions. TCL denies that any TCL products infringe the '934 patent and denies the remaining allegations in paragraph 157 of the Complaint.

158.     TCL admits that this paragraph purports to reproduce claim 4 of the '934 patent. To the extent that there are any remaining allegations in this paragraph TCL denies them.

159.     Denied.

160.     Denied.

161.     Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 184.

185.    Denied.

186.    Denied.

187.    Denied.

188.    Denied.

189.    Denied.

**COUNT V**

(TCL Defendants' Alleged Infringement of U.S. Patent No. 11,122,504)

190.    TCL incorporates its responses to the preceding paragraphs 1-189 as if fully set forth herein.

191.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191, and therefore denies them.

192.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192, and therefore denies them.

193.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193, and therefore denies them.

194.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194, and therefore denies them.

195.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 195, and therefore denies them.

196.    TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196, and therefore denies them.

197.   TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197, and therefore denies them.

198.   TCL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198, and therefore denies them.

199.   Denied.

200.   TCL admits that the TCL products include certain TCL branded smartphones and smart televisions. TCL denies that any TCL products infringe the '504 patent and denies the remaining allegations in paragraph 200 of the Complaint.

201.   TCL admits that this paragraph purports to reproduce claim 7 of the '504 patent. To the extent that there are any remaining allegations in this paragraph TCL denies them.

202.   Denied.

203.   Denied.

204.   Denied.

205.   Denied.

206.   Denied.

207.   Denied.

208.   Denied.

209.   Denied.

210.   Denied.

211.   Denied.

212.   Denied.

213.   Denied.

214.   Denied.

215. Denied.

216. Denied.

217. Denied.

218. Denied.

219. Denied.

220. TCL admits that it received correspondence from Ozmo regarding Ozmo's patent portfolio on or about March 13, 2020, and that there was subsequent correspondence with Ozmo. TCL denies the remaining allegations set forth in paragraph 220.

221. Denied.

222. Denied.

223. Denied.

224. Denied.

225. Denied.

## PRAYER FOR RELIEF

226. This section of the Complaint sets forth Ozmo's requested relief to which no response is required. TCL denies that Ozmo is entitled to any relief, whether as sought in its Prayer for Relief or otherwise, in connection with this civil action.

## DEMAND FOR JURY TRIAL

227. This section of the Complaint sets forth Ozmo's demand for jury trial on those issues so triable to which no response is required.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), TCL, without waiver, limitation, or prejudice, hereby asserts the following affirmative defenses:

**First Affirmative Defense**

**(Non-Infringement of the '991 Patent)**

1.  Ozmo's claims are barred in whole or in part because TCL has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '991 patent, either literally or under the Doctrine of Equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

**Second Affirmative Defense**

**(Invalidity of the '991 Patent)**

2.  Ozmo's claims are barred in whole or in part because each asserted claim of the '991 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

**Third Affirmative Defense**

**(Non-Infringement of the '906 Patent)**

3.  Ozmo's claims are barred in whole or in part because TCL has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '906 patent, either literally or under the Doctrine of Equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

**Fourth Affirmative Defense**

**(Invalidity of the '906 Patent)**

4.   Ozmo's claims are barred in whole or in part because each asserted claim of the '906 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

**Fifth Affirmative Defense**

**(Non-Infringement of the '814 Patent)**

5.   Ozmo's claims are barred in whole or in part because TCL has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '814 patent, either literally or under the Doctrine of Equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

**Sixth Affirmative Defense**

**(Invalidity of the '814 Patent)**

6.   Ozmo's claims are barred in whole or in part because each asserted claim of the '814 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

**Seventh Affirmative Defense**

**(Non-Infringement of the '934 Patent)**

7.   Ozmo's claims are barred in whole or in part because TCL has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '934 patent,

either literally or under the Doctrine of Equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Eighth Affirmative Defense

### (Invalidity of the '934 Patent)

8.   Ozmo's claims are barred in whole or in part because each asserted claim of the '934 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

### Ninth Affirmative Defense

### (Non-Infringement of the '504 Patent)

9.   Ozmo's claims are barred in whole or in part because TCL has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '504 patent, either literally or under the Doctrine of Equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Tenth Affirmative Defense

### (Invalidity of the '504 Patent)

10. Ozmo's claims are barred in whole or in part because each asserted claim of the '504 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

### Eleventh Affirmative Defense

### (Prosecution History Estoppel)

11. Ozmo's claims are barred in whole or in part by reason of prosecution history estoppel.

12. Ozmo is estopped from construing any valid claim of U.S. Patent Nos. 9,264,991 (the "'991 patent"); 10,873,906 (the "'906 patent"); 8,599,814 (the "'814 patent"); 11,012,934 (the "'934 patent"); and 11,122,504 (the "'504 patent") (collectively, "Patents-in-Suit") to be infringed or to have been infringed, either literally or by application of the Doctrine of Equivalents, by any product made, used, imported, sold, or offered for sale by TCL in view of prior art and/or because of admissions, representations, and/or statements made to the Patent Office during prosecution of any application leading to the issuance of the Patents-in-Suit or any related patent, because of disclosures or language in the specifications of the Patents-in-Suit, and/or because of limitations in the claims of the Patents-in-Suit.

## Twelfth Affirmative Defense

### (Limitation on Damages)

13. To the extent that Ozmo and/or any predecessors in interest or any licensees to the Patents-in-Suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that TCL's actions allegedly infringe the Patents-in-Suit, TCL is not liable to Ozmo for the acts alleged to have been performed before TCL received actual notice that the accused devices were allegedly infringing the Patents-in-Suit.

## Thirteenth Affirmative Defense

### (Ensnarement of Prior Art)

14. To the extent that Ozmo alleges that TCL infringes the Patents-in-Suit by equivalents, Ozmo's claims for relief are barred, in whole or in part, by ensnaring the prior art.

## **Fourteenth Affirmative Defense**

### **(Statute of Limitations)**

15. To the extent Ozmo seeks recovery for any alleged infringement committed more than six years prior to filing of the Complaint, such recovery is barred by 35 U.S.C. § 286.

## **Fifteenth Affirmative Defense**

### **(No Injunctive Relief)**

16. Plaintiff is not entitled to any form of injunctive relief because it cannot meet the multi-factor test required for demonstrating a right to such injunctive relief, at least because Plaintiff has not suffered and will not suffer irreparable harm due to TCL's alleged infringement and because Plaintiff has an adequate remedy at law.

## **Sixteenth Affirmative Defense**

### **(Inequitable Conduct)**

17. The Patents-in-Suit are unenforceable based on inequitable conduct as set forth in the Defendants' counterclaims below, which are incorporated herein by reference.

## **RESERVATION OF ALL AFFIRMATIVE DEFENSES**

TCL hereby gives notice that it intends to rely upon any other matter constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, and that it reserves the right to seek leave to amend this Answer to add to, amend, withdraw, or modify these defenses as its investigation continues and as discovery may require.

## DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIMS

Defendants/Counterclaim-Plaintiffs TCL Electronics Holdings Ltd. and TCL Industries Holdings Co., Ltd., (collectively, "TCL" or "Counterclaim-Plaintiffs") demand a trial by jury on all issues so triable, and advisory jury on all other issues, and assert the following counterclaims against Plaintiff/Counterclaim-Defendant Ozmo Licensing LLC ("Ozmo" or "Counterclaim-Defendant"):

## INTRODUCTION

1.  TCL and its related operating companies are global leaders in consumer technology and have been for nearly forty years. *See Our Story*, TCL, https://www.tcl.com/us/en/about-us/our-story (last visited September 18, 2023). This success has been in no small part to TCL's storied history of innovation. *See id.* TCL has thirty-five research facilities throughout the world, leading to the creation of groundbreaking technologies such as the world's first big-screen QLED TV, the world's first Mini-LED TV, and the world's first rollable AMOLED smartphone display. *See id.* Further, in 2014, TCL introduced the first Roku TV, which the press called "the first Smart TV worth using." *See id.* TCL has also received various awards related to its innovation in the consumer technology space, including the Consumer Electronic Society (CES) 2023 Innovation Award in the Mini LED TV category. *See TCL Wins Two CES 2023 Innovation Awards, Reaffirming its Leadership in Display Technology*, TCL (December 12, 2022), https://www.tcl.com/global/en/news/tcl-wins-two-ces-2023-innovation-awards; *see also TCL Wins Three Prestigious 2023-2024 EISA Awards, Including EISA Home Theatre Mini LED TV*, TCL (August 21, 2023), https://www.tcl.com/global/en/news/tcl-wins-three-prestigious-2023-2024-eisa-awards-including-eisa-home-theatre-mini-led-tv.

2.   Ozmo has never been and is not now in the business of manufacturing or selling consumer products.

3.   Ozmo does not make any products that practice the Patents-in-Suit.

4.   Ozmo has never made any products that practice the Patents-in-Suit.

5.   Ozmo does not sell any products that practice the Patents-in-Suit.

6.   Ozmo has never sold any products that practice the Patents-in-Suit.

7.   TCL does not infringe the Patents-in-Suit which are invalid, unenforceable, and should never have issued.

## **PARTIES**

8.   Defendant TCL Electronics Holding Limited ("TCL Electronics") is a limited liability company organized and existing under the laws of the Cayman Islands with a principal place of business located at 9 Floor, TCL Electronics Holdings Limited Building, TCL International E City, #1001 Zhongshan Park Road, Nanshan District, Shenzhen, Guangdong, 518067 P.R. China. TCL Electronics Holdings Limited also has a location at 7/F, TCL Building, 22 Science Park E, Hong Kong Science Park, Shatin, New Territories, Hong Kong, S.A.R.

9.   Defendant TCL Industries Holdings Co., Ltd. ("TCL Industries") is a Chinese company with a principal place of business at 9/F, TCL Electronics Building, TCL International E City, Zhong Shan Yuan Road, Nanshan District, Shenzhen, Guangdong, China.

10. Upon information and belief, Ozmo Licensing is a Texas limited liability company having its principal place of business located at 1000 Heritage Center Circle, Suite 508, Round Rock, Texas 78664.

## NATURE OF THE ACTION

11. Counterclaim-Plaintiffs seek declaratory judgment under the patent laws of the United States, 35 U.S.C. § 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., that the Patents-in-Suit are invalid, not infringed, and/or unenforceable.

## JURISDICTION AND VENUE

12. This Court has exclusive subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331, 1338; and the patent laws of the United States, 35 U.S.C. § 1 et seq.

13. This Court has personal jurisdiction over Ozmo because it has subjected itself to the jurisdiction of this Court by filing the Complaint.

14. Venue in this Court is proper based on the choice of forum by Ozmo and pursuant to 28 U.S.C. §§ 1391(b)–(c), and 1400(b).

## FACTUAL BACKGROUND

### The Patents-in-Suit

15. On or about December 3, 2013, the '814 patent issued to named inventors Katelijn Vleugels and Roel Peeters.

16. On or about February 16, 2016, the '991 patent issued to named inventors Katelijn Vleugels and Roel Peeters.

17. On or about December 22, 2020, the '906 patent issued to named inventors Katelijn Vleugels and Roel Peeters.

18. On or about May 18, 2021, the '934 patent issued to named inventors Katelijn Vleugels and Roel Peeters.

19. On or about September 14, 2021, the '504 patent issued to named inventors Katelijn Vleugels and Roel Peeters.

20. The earliest claimed priority date of the Patents-in-Suit is March 14, 2005.

21. The Patents-in-Suit all expire on April 13, 2026.

22. Ozmo purports to be the current owner of each of the Patents-in-Suit.

23. The Patents-in-Suit teach improved systems and methods for integrating a wireless personal area network ("WPAN") and a wireless local area network ("WLAN").

24. The scope of the prior art for the patents in suit includes at least wireless communication technology and associated hardware.

**Related Patents**

25. On or about July 5, 2022, U.S. Patent No. 11,382,034 ("'034 patent") issued to named inventors Katelijn Vleugels and Roel Peeters.

26. The '034 patent issued from U.S. Patent Application No. 16/669,110, which is a continuation of U.S. Patent Application No. 14/990,203, which is a continuation of U.S. Patent Application No. 14/073,260, which issued as the '991 patent.

27. On or about February 15, 2022, U.S. Patent No. 11,252,659 ("'659 patent") issued to named inventors Katelijn Vleugels and Roel Peeters.

28. The '659 patent issued from U.S. Patent Application No. 16/668,999, which is a continuation of U.S. Patent Application No. 14/990,203, which is a continuation of U.S. Patent Application No. 14/073,260, which issued as the '991 patent.

29. The '991 patent issued from U.S. Patent Application No. 14/073,260, which is a continuation of U.S. Patent Application No. 13/560,917, which issued as the '814 patent.

30. On or about April 11, 2023, U.S. Patent No. 11,627,525 ("'525 patent") issued to named inventors Katelijn Vleugels and Roel Peeters.

31. The '525 patent issued from U.S. Patent Application No. 17/476,659, which is a continuation of U.S. Patent Application No. 16/668,999, which issued as the '659 patent.

## **Exemplary Prior Art That Invalidates the Patents-in-Suit**

### **(Beach)**

32. U.S. Patent Publication No. 2004/0076136 to Beach ("Beach") was filed August 27, 2003, and published April 22, 2004. Exhibit 1, Cover Page.

33. Beach's priority date is August 28, 2002, based on the filing of U.S. Provisional Application No. 60/406,531. *Id.*

34. Even if Beach is not entitled to its earliest priority date, Beach qualifies as prior art to all the Patents-in-Suit under at least pre-AIA Section 102(a) and 102(e). *See id.*

35. If the Patents-in-Suit are not entitled to claim the benefit of their earliest-filed provisional application, Beach also qualifies as prior art under pre-AIA Section 102(b). *See id.*

36. Beach teaches and discloses a "system … with mobile units that are arranged to conduct wireless data communications with access points following a first protocol, such as IEEE standard 802.11." *Id.*, Abstract.

37. Beach is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### **(Shvodian)**

38. WIPO Patent Publication No. WO 2002/063806 A2 to Shvodian ("Shvodian") was filed February 7, 2001, and published August 15, 2002. Exhibit 2, Cover Page.

39. Shvodian's priority date is at least as early as August 15, 2002, based on its publication date. *See id.*

40. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Shvodian qualifies as prior art under pre-AIA Section 102(a), 102(b), and 102(e). *See id.*

41. Shvodian teaches and discloses a "system, method, and computer program product for sharing bandwidth by plurality of devices in a [WPAN] or a [WLAN]." *Id.*, Abstract.

42. Shvodian is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

## (Fischer)

43. U.S. Patent Publication No. 2006/0203841 to Fischer ("Fischer") was filed March 9, 2005, and published September 14, 2006. Exhibit 3, Cover Page.

44. Fischer's priority date is at least as early as March 9, 2005, based on its filing date. *See id.*

45. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Fischer qualifies as prior art under pre-AIA Section 102(e). *See id.*

46. Fischer teaches and discloses a "a method and apparatus for coordinating multiple protocols using a shared communication medium." *Id.*, Abstract.

47. Fischer is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

## (Tanach)

48. U.S. Patent No. 8,441,971 to Tanach ("Tanach") was filed December 21, 2004, published June 22, 2006, and issued May 14, 2013. Exhibit 4, Cover Page.

49. Tanach's priority date is at least as early as December 21, 2004, based on its filing date. *See id.*

50. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Tanach qualifies as prior art under pre-AIA Section 102(a) and 102(e). *See id.*

51. Tanach teaches and discloses various embodiments that "relate to communications generally, including apparatus, systems, and methods used to save power while communicating various types of information." *Id.*, Abstract. Tanach applies to "any wired and/or wireless system" including "WPAN" and "WLAN." *Id.* at 7:2–14.

52. Tanach is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### (Abuelma'atti)

53. "A Wireless Networked Appliances MAC Bridge" by Abuelma'atti et al. ("Abuelma'atti") was published October 2002. Exhibit 5, at 1.

54. Abuelma'atti's priority date is at least as early as October 2002, based on its publication date. *See id.*

55. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Abuelma'atti qualifies as prior art under pre-AIA Section 102(a) and 102(b). *See id.*

56. Abuelma'atti teaches and discloses various embodiments that address the interoperability between "wireless local area network (WLAN) and the wireless personal area network (WPAN)." *Id.*, Abstract. Abuelma'atti introduces "the wireless networked appliances MAC Bridge as an interoperability solution that interworks these domains below the MAC service

boundary creating a single interoperable domain that allows applications to run seamlessly in the upper layers." *Id.*

57. Abuelma'atti is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### (Shellhammer)

58. European Patent Application No. EP1207654A2 to Shellhammer ("Shellhammer") was filed September 27, 2001, and published May 22, 2002. Exhibit 6, Cover Page.

59. Shellhammer's priority date is at least as early as May 22, 2002, based on its publication date. *See id.*

60. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Shellhammer qualifies as prior art at least under pre-AIA Section 102(a) and 102(b). *See id.*

61. Shellhammer teaches and discloses various embodiments that address "frequency coordination among two different wireless network protocols, such as the IEEE 802.11 and Bluetooth protocols, operating in proximity with one another." *Id.*, Abstract.

62. Shellhammer is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### (Cromer)

63. U.S. Patent No. 7,389,352 to Cromer ("Cromer") was filed December 24, 2003, published July 28, 2005, and issued on June 17, 2008. Exhibit 7, Cover Page.

64. Cromer's priority date is at least as early as December 24, 2003, based on its filing date. *See id.*

65. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Cromer qualifies as prior art at least under pre-AIA Section 102(a), 102(b), and 102(e). *See id.*

66. Cromer teaches and discloses a "system and method for concurrent WLAN and WPAN wireless modes from a single device." *Id.*, Abstract.

67. Cromer is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### (Sinivaara)

68. WIPO Patent Publication No. WO 2006/000617 A1 to Sinivaara ("Sinivaara") was filed June 29, 2004, and published January 5, 2006. Exhibit 8, Cover Page.

69. Sinivaara's priority date is at least as early as June 29, 2004, based on its filing date. *See id.*

70. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Sinivaara qualifies as prior art at least under pre-AIA Section 102(a) and 102(e). *See id.*

71. Sinivaara teaches and discloses a "method for controlling the operation of a short-range wireless terminal capable of operating in a first beacon-based network and in a second beacon-based network, and having an active state and a power save state in the first beacon-based network." *Id.*, Abstract. Short-range wireless systems "includes wireless personal area networks (PANs) and wireless local area networks (WLANs)." *Id.* 1:15–21.

72. Sinivaara is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

**(Ganu)**

73. "Architecture and Prototyping of an 802.11-Based Self-Organizing Hierarchical Ad-Hoc Wireless Network (SOHAN)" by Ganu et al. ("Ganu") published at least as early as September 2004. *See* Exhibit 9, at 880.

74. Ganu's priority date is at least as early as September 2004, based on its publication date. *See id.*

75. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Ganu qualifies as prior art at least under pre-AIA Section 102(a). *See id.*

76. If the Patents-in-Suit are not entitled to claim the benefit of their earliest-filed provisional application, Ganu further qualifies as prior art under pre-AIA Section 102(b). *See id.*

77. Ganu teaches and discloses a "a novel self-organizing hierarchical ad-hoc wireless network ("SOHAN") designed to provide significant improvements in system capacity and performance relative to conventional 'flat' ad-hoc networking approaches." *Id.* at 880. "This architecture is applicable to a number of emerging ad-hoc networking scenarios including extended wireless local-area networks, home wireless networks and large-scale sensor networks." *Id.*

78. Ganu is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

**(Jeong)**

79. U.S. Patent No. 7,551,568 to Jeong ("Jeong") was filed June 22, 2005, published January 5, 2006, and issued on June 23, 2008. Exhibit 10, Cover Page.

80. Jeong's priority date is June 22, 2004, based on the filing of U.S. Provisional Application No. 60/601,411. *See id.*

81. Jeong qualifies as prior art at least under pre-AIA Section 102(a) and 102(e). *See id.*

82. Jeong teaches and discloses a packet communication "method and system in which a packet destined for a terminal is provided service according to a service table indexed by packet classification and the terminal's power mode." *Id.*, Abstract. This power mode communication system applies to "communication devices" including "devices in wireless communications systems, such as IEEE 802.11 WLAN." *Id.* 1:28–49.

83. Jeong is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### (Judd)

84. WIPO Patent Publication No. WO 2001/52447 A2 to Judd ("Judd") was filed January 16, 2001, and published July 19, 2001. Exhibit 11, Cover Page.

85. Judd's priority date is at least as early as January 16, 2001, based on its filing date. *See id.*

86. Even if the Patents-in-Suit are entitled to claim the benefit of their earliest-filed provisional application, Judd qualifies as prior art under pre-AIA Section 102(a), 102(b), and 102(e). *See id.*

87. Judd teaches and discloses a "flat-panel repeater" for increasing isolation "between the antennas on opposite sides of the repeater" which "can be used to achieve greater system gain, and therefore significantly extend the range of the system." *Id.*, Abstract. The application described applies to "any frequency band, including, but not limited to … Bluetooth Applications … [and] Indoor Wireless LANs … (Local Area Network)." *Id.* 18:13–29.

88. Judd is in "the scope and content of the prior art" for the Patents-in-Suit. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

**A Licensee's Failure to Mark Precludes Damages Between 12/20/20 and 4/5/23**

89. On or around December 18, 2020, Ozmo granted a license to ███ ("December 2020 License"). Exhibit 12, at 1–15.

90. The December 2020 License licensed ████████████████████████████████ ██████████████████████████████. *Id.* at 3, 17.

91. The December 2020 License defines "Patents" to include ████████████████ ████████████████████████████.

92. The '934 and '504 patents are continuations of the '814 patent.

93. The December 2020 License ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

94. As of May 14, 2024, ████████████████████████████████ ████████████████████████████████████████████████ *See* Exhibit 13.

95. ████████████████████████████████████████

96. ████████████████████████████████████████ ████████████████████████████████████

97. ████████████████████████████████████████ ████████████

98. ████████████████████████████████████████ ██████████

99. ████████████████████████████████



100.  ███████████████████████████████████████

████████████████

101.  ██████████████████████████

102.  ███████████████████████████████████████

██████████████████

103.  ██████████████████████████

104.  ███████████████████████████████████████

████████████████████

105.  ████████████████████████████████

106.  ███████████████████████████████████████

███████████████████████

107.  ██████████████████████████████

108.  ███████████████████████████████████████

██████████████████████

109.  ██████████████████████████████████

110.  ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

111.  All of the ████████████████████████████ were being manufactured

and sold at the time the license was entered into in December 2020.

112.  At least one of the ████████████████████████████ was being

manufactured and sold at the time the license was entered into in December 2020.

113.   At least one of the ██████████████████████████ was being manufactured and sold from December 18, 2020, through April 5, 2023. *Id.*

114.   All of the ██████████████████████ were being manufactured and sold from December 18, 2020, through April 5, 2023.

115.   During its license negotiations with ████, Ozmo contended that ████████████ ████████████ practice one or more claims of the '991 Patent.

116.   ████████████████████ practice one or more claims of the '991 Patent.

117.   During its license negotiations with ████, Ozmo contended that ████████████ ████████████ practice one or more claims of the '906 Patent.

118.   ████████████████████ practice one or more claims of the '906 Patent.

119.   During its license negotiations with ████ Ozmo contended that Z██████████ ████████████ practice one or more claims of the '814 Patent.

120.   ████████████████████ practice one or more claims of the '814 Patent.

121.   During its license negotiations with ████ Ozmo contended that ████████████ ████████████ practice one or more claims of the '934 Patent.

122.   ████████████████████ practice one or more claims of the '934 Patent.

123.   During its license negotiations with ████ Ozmo contended that ████████████ ████████████ practice one or more claims of the '504 Patent.

124.   ████████████████████ practice one or more claims of the '504 Patent.

125.   The December 2020 License ████████████████████████.

126.   The December 2020 License ████████████████████.

127.   None of the Patents-in-Suit appear on ████████████████████████

36

128.    None of the Patents-in-Suit appear on ████████████████████████

████████████████████████████

129.    Ozmo's licensee, ███████████████████████████████████████

███████████████████████

130.    On April 5, 2023, Ozmo filed a lawsuit against TCL asserting various TCL Wi-Fi Direct Products infringe the Patents-in-Suit.

131.    Ozmo is not entitled to any damages for any alleged infringement between December 18, 2020 and April 5, 2023.

### The Patents-in-Suit Are Unenforceable Due To Inequitable Conduct

132.    The inequitable conduct allegations herein relate to each of the two named inventors Katelijn Vleugels ("Ms. Vleugels") and Roel Peeters ("Mr. Peeters") and, based on the publicly available file histories of the Patents-in-Suit and all other related applications, such as those that claim priority to U.S. Provisional Application 60/661763 ("Patents-in-Suit Family") and prior to obtaining any discovery, the following prosecution counsel: Philip H. Albert ("Mr. Albert"), Brian A. Tollefson ("Mr. Tollefson"), and Mathew Vella ("Mr. Vella") (collectively, the "Named Inventors and Prosecution Counsel"). To the extent discovery shows that additional prosecuting attorneys or other individuals substantively involved in the prosecution of the Patents-in-Suit Family had knowledge of any of the information discussed herein, those additional individuals also committed inequitable conduct for the same reasons.

### (The Failure to Disclose Double Patenting References)

133.    The Named Inventors and Prosecution Counsel committed inequitable conduct by failing to disclose to the examiners of the Patents-in-Suit Family the pending and issued claims that claim priority to U.S. Provisional Application 60/661,746 ("Vleugels I Patent Family"). The

claims of the Patents-in-Suit are not patentably distinct from pending and issued claims in the Vleugels I Patent Family under the doctrine of obviousness type double patenting. If the claims of the Vleugels I Patent Family had been disclosed during prosecution of the Patents-in-Suit, the claims in the Patents-in-Suit would not have issued.

134.    On or about December 20, 2012, the Patents-in-Suit Family ceased to be commonly owned with the Vleugels I Patent Family.

135.    After December 20, 2012, the Patents-in-Suit Family was owned by Omega Sub Holdings, Inc.

136.    After December 20, 2012, the Vleugels I Patent Family was owned by Atmel Wi-Fi Solutions.

137.    The Patents-in-Suit Family and Vleugels I Patent Family have not been commonly owned at any time after December 20, 2012.

138.    Because of the lack of common ownership after December 20, 2012, any rejection of a pending claim in an application in the Patents-in-Suit Family over a pending or issued claim in the Vleugels I Patent Family under the doctrine of obviousness type double patenting after December 20, 2012, could not have been overcome by a terminal disclaimer.

**(Prosecution of 13/560,917 (issued as the '814 patent))**

139.    During prosecution of the '814 patent, the Named Inventors and Prosecution Counsel did not disclose pending claims in the Vleugels I Patent Family.

140.    The claims of the '814 patent were allowed based on the amendment adding the limitation "at least some of the communications using the second wireless network protocol impinge on at least some antennae used for the first wireless network." *See* Exhibit 23 (13/560,917 Rejection dated December 6, 2012); Exhibit 24 at 2 (13/560,917 Interview summary dated May 2,

2013); Exhibit 25 at 2, 10-11 (13/560,917 Amendment dated May 7, 2013); Exhibit 26 (Notice of Allowance dated August 5, 2013). The claimed subject matter is disclosed, or at least rendered obvious, by the pending claims of the Vleugels I Patent Family that were not disclosed.

141.    The allowed claims of the '814 patent (e.g., claim 1) were not patentably distinct from the then pending claims 1-29 of 11/376,753 which required, inter alia, a circuit for communicating on a first set of frequencies with WLAN devices and PAN devices using partially consistent protocols. *See* Exhibit 27 (11/376,753 Amendment dated June 20, 2012, setting forth claims 1-29 as pending at the time of allowance and issuance of '814 patent). The allowed claims of the '814 patent (e.g., claim 1) were not patentably distinct from the then pending claims 1-38 of 13/340,465 which required, inter alia, a circuit for communicating on a first set of frequencies with WLAN devices and PAN devices using partially consistent protocols. *See* Exhibit 28 (13/340,465 Amendment dated January 18, 2013, setting forth claims 1-38 as pending in 13/340,465 at the time of allowance of the claims in the '814 patent); Exhibit 29 (13/340,465 Amendment dated August 21, 2013 (setting forth claims 1-38 as pending in 13/340,465 at the time of issuance of the claims in the '814 patent)). Additionally, applicant repeatedly argued that the claims of the '814 patent were patentable over the prior art because the prior art lacked partially consistent protocols. *See* Exhibit 30 at 10-11 (13/560,917 Response dated March 5, 2013); Exhibit 24 at 2; Exhibit 25 at 10-12. But that subject matter was claimed in the withheld claims as shown above.

142.    The Named Inventors and Prosecution Counsel knew that the data forwarding limitations '814 patent's claims (e.g., claim 1) were not sufficient to make those claims patentably distinct from the claims in the Vleugels I Patent Family, at least because of contemporaneous

rejections in related application 13/249,059 (which issued as U.S. Patent No. 8,165,102 (the "'102 patent")).

143.    On November 28, 2011, Examiner Tang rejected the pending claims in related application 13/249,059 over the claims of 11/422,945 in view of U.S. Patent No. 6,771,933 to Eng. *See* Exhibit 31 (13/249,059 Rejection dated November 28, 2011, at 3-6). Like the claims of the '814 patent, the rejected claims of 13/249,059 included data forwarding limitations. *Id.* The claims of 11/422,945 did not explicitly include data forwarding limitation, but Examiner Tang held those limitations were not sufficient to render the claims in 13/249,059 patentably distinct from the claims in 11/422,945 because those limitations would have been obvious in view of Eng. *Id.* On January 18, 2012, applicant conducted an interview with Examiner Tang to discuss, among other issues, the double patenting rejection. *See* Exhibit 32 at 2 (13/249,059 Interview Summary dated February 3, 2012, summarizing an interview that occurred on January 18, 2012, and included a discussion of the double patenting rejection). After the interview, the applicant filed a terminal disclaimer to overcome the double patenting rejection. *See* Exhibit 33 at 9 (13/249,059 Response dated January 23, 2012); Exhibit 34 (13/249,059 Terminal Disclaimer). On March 13, 2012, Examiner Tang allowed the claims. *See* Exhibit 35 at 1(13/249,059 Notice of Allowance dated March 13, 2012). The application subsequently issued as the '102 patent on April 24, 2012. *See* Exhibit 36 (U.S. Pat. No. 8,165,102).

144.    On July 27, 2012, the applicant filed the 13/560,917 application, which issued as the '814 patent. The 13/560,917 application as filed included claims that were patentably indistinct from the claims that issued in the '102 patent. *See* Exhibit 37. On December 6, 2012, the pending claims of the '814 patent were rejected by Examiner Voltaire over the claims of the '102 patent for double patenting. *See* Exhibit 23 at 3-15. The applicant overcame the rejection by filing a

terminal disclaimer. *See* Exhibit 38 (13/560,917 Terminal Disclaimer dated March 6, 2013). Examiner Voltaire was already aware of and applying Eng to show that the data forwarding limitations of the '814 patent would have been obvious. *See* Exhibit 23 at 20-22; Exhibit 24 at 2. If the Named Inventors or Prosecution Counsel had disclosed the pending claims of either 11/376,753 or 13/340,465 from the Vleugels I Patent Family during examination of the '814 patent, Examiner Voltaire would have used those claims in combination with Eng to reject the pending '814 patent claims under the doctrine of obviousness type double patenting using the same logic applied by Examiner Tang during prosecution of the '102 patent.

**(Prosecution of 14/073,260 (issued as the '991 patent))**

145.    During prosecution of the '991 patent, the Named Inventors and Prosecution Counsel did not disclose pending and issued claims in the Vleugels I Patent Family.

146.    The allowed claims of the '991 patent were not patentably distinct from the claims of the '814 patent. *See* Exhibit 39 (14/073,260 Rejection dated July 22, 2014); Exhibit 40 (14/073,260 Terminal Disclaimer dated November 24, 2014). The claims of the '991 patent were allowed based on the amendment adding the limitation "and wherein at least some of the communications using the second network protocol impinge on at least some antennae used for communications using the first network protocol." *See* Exhibit 41 at 7, 9, 10-13 (14/073,260 Examiner's Amendment in the Notice of Allowance dated October 6, 2015). This limitation is disclosed, or at least rendered obvious, by the claims of the Vleugels I Patent Family that were not disclosed.

147.    The allowed claims of the '991 patent (e.g., claim 1) were not patentably distinct from issued claims 1-10 of 9,036,613 which require, inter alia, a wireless network interface circuit with logic for communicating on a common wireless medium with WLAN devices and PAN

devices using partially compliant protocols. *See* Exhibit 42. These claims include means-plus-function limitations that are construed to include the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family.

148.    The allowed claims of the '991 patent (e.g., claim 1) were not patentably distinct from issued claims 1-36 of U.S. Patent No. 8,929,350 which require, inter alia, a device that communicates over a common wireless medium with WLAN devices and PAN devices using partially compliant protocols. *See* Exhibit 43 (U.S. Pat. No. 8,929,350).

149.    The allowed claims of the '991 patent (e.g., claim 1) were not patentably distinct from pending claim 1 of 14/688,556 which required, inter alia, a device enhancing wireless co-existence with logic for communicating with WLAN devices and PAN devices using partially compliant protocols. *See* Exhibit 44 (14/688,556 Application filed April 16, 2015 setting forth claim 1 as pending in 14/688,556 at the time of allowance and issuance of the claims in the '991 patent). These claims include means-plus-function limitations that are construed to include the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family.

150.    The allowed claims of the '991 patent (e.g., claim 1) were not patentably distinct from pending claims 1-20 of 14/589,382 which required, inter alia, a device using a shared wireless medium and logic for communicating with WLAN devices and PAN devices using partially compliant protocols. *See* Exhibit 45 (14/589,382 Application filed January 5, 2015 setting forth claims 1-20 as pending in 14/589,382 at the time of allowance and issuance of the claims in the '991 patent). These claims include means-plus-function limitations that are construed to include the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family.

151.    Additionally, applicant repeatedly argued that the claims of the '991 patent were patentable over the prior art because the prior art lacked partially consistent protocols. *See, e.g.*,

Exhibit 46 at 8-10 (14/073,260 Response dated Nov. 24, 2014). But that subject matter was disclosed in the withheld claims.

152.    The Named Inventors and Prosecution Counsel knew that the data forwarding limitations in the claims of the '991 patent (e.g., claim 1) were not sufficient to make those claims patentably distinct from the claims in the Vleugels I Patent Family. The examiner of the '991 patent was already using Eng to show that the data forwarding limitations of the '991 patent would have been obvious. *See, e.g.*, Exhibit 39 (14/073,260 Rejection dated July 22, 2014). If the Named Inventors or Prosecution Counsel had disclosed the claims of any of 9,036,613, 8,929,350, 14/688,556, or 14/589,382 during examination of the '991 patent, the examiner would have used those claims, alone or in combination with Eng, to reject the '991 patent claims for the same reasons explained above with respect to the '814 patent, and they would not have issued.

## (Prosecution of 16/912,262 (issued as the '906 patent))

153.    During the prosecution of the '906 patent, the Named Inventors did not disclose the issued claims in the Vleugels I Patent Family, including U.S. Patent Nos. 9,036,613, 8,929,350, 10,045,290, and 9,913,215.

154.    During prosecution of the '906 patent, the examiner allowed the claims based on an amendment to include limitations from certain dependent claims related to inactivity periods. *See, e.g.*, Exhibit 47 at 18 (16/912,262 Rejection dated August 12, 2020 noting dependent claims 11 and 26 related to inactivity periods would be allowable); Exhibit 48 at 8 (16/912,262 Amendment dated October 1, 2020 (amending claims 11 and 26 to include the limitations from the other claims)); Exhibit 49 (16/912,262 Notice of Allowance dated October 28, 2020).

155.    The inactivity limitations relied on by the examiner to allow the claims of the '906 patent were disclosed, or at least rendered obvious, by the claims of the '613 patent. *See, e.g.*,

Exhibit 42 at 22–23 (9,036,613 at claim 1 (claiming "logic for determining end of an inactivity time . . . enabling a coordination function following the end of the inactivity time . . . during the reservation and after the end of the inactivity time" which is a means-plus-function limitation construed to cover the structures disclosed in the specification, including the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family), claim 6 (claiming a method of same)).

156.    The inactivity limitations relied on by the examiner to allow the claims of the '906 patent were disclosed, or at least rendered obvious, by the claims of U.S. Patent No. 8,929,350. *See, e.g.*, Exhibit 43 at 38 (8,929,350 at claim 1 (claiming method for scheduling service periods for communication and powering down during other times)).

157.    The inactivity limitations relied on by the examiner to allow the claims of the '906 patent were disclosed, or at least rendered obvious, by the claims of U.S. Patent No. 10,045,290. *See, e.g.*, Exhibit 50 at 23–25 (10,045,290 at claims 1–15 (claiming determining mutually agreed inactivity periods, powering off all or a portion of circuitry during the inactivity period, enabling coordination function after inactivity period), claims 16-29 (claiming apparatus using means-plus-function limitations to inactivity periods that are construed to cover the structures disclosed in the specification, including the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family)).

158.    The claims of the '906 patent are not patentably distinct from, and would not have issued over, the claims in the Vleugels I Patent Family if they had been disclosed.

**(Prosecution of 17/125,797 (issued as the '934 patent))**

159.     During the prosecution of the '934 patent, the Named Inventors did not disclose the issued claims in the Vleugels I Patent Family, including U.S. Patent Nos. 9,036,613, 8,929,350, 10,045,290, and 9,913,215.

160.     During prosecution of the '934 patent, the examiner allowed pending claims 2-7 (issued claims 1-6) based on the applicant filing a terminal disclaimer over the patentably indistinct claims of the '906 patent. *See* Exhibit 51 (17/125,797 Rejection dated March 4, 2012 rejecting pending claims 2-7 for double patenting over claims of the '906 patent and indicating they would be allowable with a terminal disclaimer); Exhibit 52 (17/125,797 Terminal Disclaimer dated March 22, 2021).

161.     Claims 1-6 of the '934 patent are not patentably distinct from, and would not have issued over, the claims of the Vleugels I Patent Family if they had been disclosed for the reasons give above with respect to the '906 patent.

162.     During prosecution of the '934 patent, the examiner allowed pending claims 8-15 (issued claims 7-14) based on the limitation "the second WPAN protocol frame comprises an SSID adapted to identify the WPAN protocol." *See* Exhibit 51 at 12 (17/125,797 Rejection dated March 4, 2012).

163.     The SSID limitation relied on by the examiner to allow the claims 7-14 of the '934 patent was disclosed, or at least rendered obvious, by the claims of the '613 patent. *See, e.g.*, Exhibit 42 at 22–23 (9,036,613 at claim 1 (claiming "logic for communicating with a node of a second wireless network as a network controller" which is a means-plus-function limitation construed to cover the structures disclosed in the specification, including the SSID structure copied

from the Vleugels I Patent Family into the Patents-in-Suit Family), claim 6 (claiming a method of same)).

164.    The SSID limitation relied on by the examiner to allow the claims 7-14 of the '934 patent was disclosed, or at least rendered obvious, by the claims of U.S. Patent No. 10,045,290. *See, e.g.*, Exhibit 50 at 2325 (10,045,290 at claims 1-15 (claiming method), claims 16-29 (claiming apparatus using means-plus-function limitations to logic for communicating with wireless PAN devices that are construed to cover the structures disclosed in the specification, including the SSID structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family)).

165.    The SSID limitation relied on by the examiner to allow the claims 7-14 of the '934 patent was disclosed, or at least rendered obvious, by the claims of U.S. Patent No. 9,913,215. *See, e.g.*, Exhibit 53 at 39 (9,913,215 at claims 1-9 (claiming method), claims 10-18 (claiming apparatus using means-plus-function limitations to logic for communicating with wireless PAN devices that are construed to cover the structures disclosed in the specification, including the SSID structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family)).

166.    Claims 7-14 of the '934 patent are not patentably distinct from, and would not have issued over, the claims of the Vleugels I Patent Family if they had been disclosed.

### (Prosecution of 17/322,492 (issued as the '504 patent))

167.    During the prosecution of the '504 patent, the Named Inventors did not disclose the issued claims in the Vleugels I Patent Family, including U.S. Patent Nos. 9,036,613, 8,929,350, 10,045,290, and 9,913,215.

168.    During prosecution of the '504 patent, the examiner allowed the claims based on limitations directed to partially compliant overlay protocols and inactivity periods. *See* Exhibit 54

at 6 (17/322,492 Notice of Allowance dated July 22, 2021). These limitations are disclosed, or at least rendered obvious, by the claims of the Vleugels I Patent Family.

169.     The limitations relied on by the examiner to allow the claims of the '504 patent were disclosed, or at least rendered obvious, by the claims of the '613 patent. *See, e.g.*, Exhibit 42 at 22–23 (9,036,613 at claim 1 (claiming a partially compliant overlay protocol and "logic for determining end of an inactivity time . . . enabling a coordination function following the end of the inactivity time . . . during the reservation and after the end of the inactivity time" which is a means-plus-function limitation construed to cover the structures disclosed in the specification, including the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family), claim 6 (claiming a method of same)).

170.     The limitations relied on by the examiner to allow the claims of the '504 patent were disclosed, or at least rendered obvious, by the claims of U.S. Patent No. 8,929,350. *See, e.g.*, Exhibit 43 at 38 (8,929,350 at claim 1 (claiming a PAN protocol that is at least partially compliant with a WLAN protocol and a method for scheduling service periods for communication and powering down during other times)).

171.     The limitations relied on by the examiner to allow the claims of the '504 patent were disclosed, or at least rendered obvious, by the claims of U.S. Patent No. 10,045,290. *See, e.g.*, Exhibit 50 at 23–25 (10,045,290 at claims 1-15 (claiming an overlay protocol partially compliant with a WLAN protocol and determining mutually agreed inactivity periods, powering off all or a portion of circuitry during the inactivity period, enabling coordination function after inactivity period), claims 16-29 (claiming apparatus using means-plus-function limitations to partially complaint overlay protocol with inactivity periods that are construed to cover the

structures disclosed in the specification, including the structure copied from the Vleugels I Patent Family into the Patents-in-Suit Family)).

172.    The claims of the '504 patent are not patentably distinct from, and would not have issued over, the claims of the Vleugels I Patent Family if they had been disclosed.

**(Intent)**

173.    The single most reasonable inference able to be drawn from the evidence is that the Named Inventors and Prosecution Counsel intended to deceive the PTO into issuing the claims of the Patents-in-Suit even though they were not patentably distinct from the claims in the Vleugels I Patent Family.

174.    Evidence of intent includes the contemporaneous prosecution of the two patent families in front of different examiners using patentably indistinct claim language as shown above. In particular, during prosecution the applicant repeatedly argued that the prior art asserted against the applications in the Patents-in-Suit Family lacked a partially compliant/consistent overlay protocol, despite the fact that was disclosed in the claims of the Vleugels I Patent Family.

175.    Evidence of intent includes the applicant copying content from Vleugels I into the Patents-in-Suit Family in 2012, including content that comprised the structure for means-plus-function limitations in both families, and then failing to disclose the pending and issued claims in the Vleugels I Patent Family. The single most reasonable inference from withholding those claims is to deceive the examiner into issuing patentably indistinct claims in the Patents-in-Suit.

176.    Evidence of intent includes the applicant copying content from Vleugels I in July 2012, just prior to December 2012 when ownership of the Vleugels I Patent Family and Patents-in-Suit Family was divided. The single most reasonable inference of copying content from the Vleugels I Patent Family into the Patents-in-Suit Family prior to separating ownership of those

families is that the Named Inventors and Prosecution Counsel intended to prosecute patentably indistinct claims in patent families that were not commonly owned, and to deceive the examiner into issuing the claims in the Patents-in-Suit Family.

177.    Evidence of knowledge and intent includes the selective disclosure of other materials from the examination of the Vleugels I Patent Family as discussed below with respect to rejections and responses. Thus, the Named Inventors and Prosecuting Attorneys were clearly aware of the subject matter overlap between these families, and the duty to disclose relevant information between them, but chose not to disclose the patentably indistinct claims. There was no legitimate reason to withhold the pending and issued claims of the Vleugels I Patent Family from the examiner of the Patents-in-Suit Family.

### (Failure to Disclose Office Actions and Responses)

178.    The Named Inventors and Prosecution Counsel committed inequitable conduct by failing to disclose to the examiners of the Patents-in-Suit the office actions made by the examiners of the Vleugels I Patent Family and responses made thereto.

179.    The Named Inventors had knowledge of the office actions in the Vleugels I Patent Family and responses made thereto.

180.    Prosecution Counsel had knowledge of the office actions in the Vleugels I Patent Family and responses made thereto.

181.    Neither the Named Inventors nor Prosecution Counsel disclosed to the examiners of the Patents-in-Suit any office action in the Vleugels I Patent Family or any response thereto.

182.    The office actions and responses in the Vleugels I Patent Family were material and, if they had been disclosed to the examiners of the Patents-in-Suit, the claims of the Patents-in-Suit would not have issued.

183.    During prosecution of 11/376,737 the Named Inventors and Prosecution Counsel were unable to obtain any claims and abandoned the application. *See* Exhibit 55 (11/376,737 Notice of Abandonment dated November 23, 2011). The Named Inventors and Prosecution Counsel withheld the rejections by Examiner Manoharan and responses thereto, including the Notice of Abandonment, to deceive the examiners of the Patents-in-Suit into issuing the claims. If those rejections and responses had been disclosed during prosecution of the Patents-in-Suit, the examiners would have not allowed the claims and they would not have issued.

184.    During prosecution of 11/423,813 the Named Inventors and Prosecution Counsel were unable to obtain any claims and abandoned the application. *See* Exhibit 56 (11/423,813 Notice of Abandonment dated July 6, 2012). The Named Inventors and Prosecution Counsel withheld the rejections by Examiner Manoharan and responses thereto, including the Notice of Abandonment, to deceive the examiners of the Patents-in-Suit into issuing the claims. If those rejections and responses had been disclosed during prosecution of the Patents-in-Suit, the examiners would have not allowed the claims and they would not have issued.

185.    During prosecution of 11/376,753 (issued as 9,036,613) the Named Inventors and Prosecution Counsel were unable to obtain any claims prior to the December 20, 2012 separation of ownership of the patent families. *See* Exhibit 57 (11/376,753 Rejection dated August 24, 2012); Exhibit 58 (11/376,753 Interview Summary dated September 6, 2012). The Named Inventors and Prosecution Counsel withheld the rejections by Examiner Manoharan and responses thereto, to deceive the examiners of the Patents-in-Suit into issuing the claims. If those rejections and responses had been disclosed during prosecution of the Patents-in-Suit, the examiners would have not allowed the claims and they would not have issued.

186.     During prosecution of 13/340,465 (issued as 8,929,350) the Named Inventors and Prosecution Counsel were unable to obtain any claims prior to the December 20, 2012 separation of ownership of the patent families. *See* Exhibit 59 (13/340,465 Rejection dated July 20, 2012). The Named Inventors and Prosecution Counsel withheld Examiner Manoharan's rejections and responses thereto, to deceive the examiners of the Patents-in-Suit into issuing the claims. If those rejections and responses had been disclosed during prosecution of the Patents-in-Suit, the examiners would have not allowed the claims and they would not have issued.

187.     On January 10, 2011, during prosecution of 12/892,825, the applicant submitted an IDS disclosing certain references applied by Examiner Monoharan during prosecution of the Vleugels I Patent Family. *See* Exhibit 60 (12/892,825 IDS dated January 10, 2011, with Transmittal Letter of same date).

188.     Applicant stated in the transmittal letter with the IDS that the references "were cited in Office Actions and a Notice of Allowance mailed on November 21, 2008, October 22, 2009, and June 23, 2010, in related U.S. Patent Application No. 11/422,945. Copies of the Office Actions and the Notice of Allowance in 11/422,945 are available on PAIR and are believed to be readily accessible to the Examiner." *See id* at 1-2.

189.     The representation that the references in the IDS dated January 10, 2011, in 12/892,825 that were applied by Examiner Monoharan were cited in an Office Action or Notice of Allowance mailed on November 21, 2008, October 22, 2009, or June 23, 2010, in U.S. Patent Application No. 11/422,945 was false and was also false with respect to the references in that IDS that were cited by Examiner Monoharan in rejecting the claims in the Vleugels I Patent Family.

190.     The references in the IDS dated January 10, 2011 in 12/892,825 that were applied by Examiner Monoharan were not cited in an Office Action or Notice of Allowance mailed on

November 21, 2008, October 22, 2009, or June 23, 2010 in U.S. Patent Application No. 11/422,945. *See* Exhibit 61 (11/422,945 Rejection dated November 21, 2008 citing five different references); Exhibit 62 (11/422,945 Rejection dated October 22, 2009 citing four different references); Exhibit 63 (11/422,945 Notice of Allowance dated June 23, 2010, not citing any references). U.S. Patent Application 11/422,945 is part of the Patents-in-Suit Family and its examination did not include the references applied by Examiner Monoharan in rejecting the claims in the Vleugels I Patent Family.

191.    There was no legitimate reason to misrepresent the source of the references in the IDS dated January 10, 2011 and misleadingly point the examiner of the Patents-in-Suit Family to office actions of the Patents-in-Suit Family, other than to withhold the office actions and responses thereto in the Vleugels I Patent Family that actually cited those references and thereby deceive the examiners of the Patents-in-Suit Family into issuing the claims.

192.    The single most reasonable inference able to be drawn from the evidence is that the Named Inventors and Prosecution Counsel intended to deceive the PTO into issuing the claims of the Patents-in-Suit. During prosecution of the Patents-in-Suit the Named Inventors and Prosecution Counsel disclosed certain office actions from the Patents-in-Suit Family, indicating they subjectively understood they should disclose relevant office actions. *See* '814 patent at 2; '991 patent at 2. And the discussion of office actions and notice of allowances in the January 10, 2011, Transmittal Letter reflects that they knew the origins of the references and related office actions and responses were material to the examiner. But they failed to disclose the relevant office actions from the Vleugels I Patent Family and misrepresented the source of the references as shown above. The Named Inventors and Prosecution Counsel knew that they had been unable to obtain allowance of any claims from Examiner Monoharan in prosecution of the Vleugels I Patent Family

prior to December 2012. The single most reasonable inference from withholding those office actions was to withhold them from the examiners of the Patents-in-Suit, and thereby deceive them into issuing the claims in the Patents-in-Suit.

### (Failure to Disclose Prior Art Teaching Information Elements)

193.    The Named Inventors committed inequitable conduct by failing to disclose to the examiners of the Patents-in-Suit that it was known in the art to modify 802.11 frames and fields to implement additional, non-standard functionality using Vendor Specific Elements.

194.    On information and belief, named inventor Katelijn Vleugels worked at Atheros from August 2003 to December 2004. On information and belief, the Named Inventors were aware of Atheros's Wi-Fi products which implemented 802.11 overlay protocols to add functionality such as Super G and Super AG frame bursting, compression, and channel bonding. On information and belief, the Atheros Products used modified 802.11 frames and fields to support overlay protocols, including the use of Information Elements.

195.    On information and belief, the Named Inventors were aware of contemporaneous, competing approaches to add overlay protocols by Broadcom, Airgo Networks, and Conexant, which also used modified 802.11 frames and fields to support their overlay protocols, including the use of Information Elements.

196.    On information and belief, the Named Inventors were aware of efforts in the industry to standardize the use of modified 802.11 frames and fields to support overlay protocols, including the use of Information Elements. *See, e.g.*, Exhibit 64 (IEEE 802.11-04/522r0, disclosing Vendor-Specific Information Element); Exhibit 65 (IEEE 802.11-03-504r7, disclosing WMM extensions and Information Element); Exhibit 66 (60/661,746, describing 102e extensions with modified frames and fields in prior art P802.11e, which included Information Elements).

197.    The withheld information was material and, if it had been disclosed to the examiners of the Patents-in-Suit, the claims of the Patents-in-Suit would not have issued.

198.    The single most reasonable inference able to be drawn from the evidence is that the Named Inventors intended to deceive the PTO into issuing the claims of the Patents-in-Suit by withholding this information.

### The Related Patents Are Unenforceable Due To Infectious Liability

199.    The '034 patent, '659 patent, and '525 patent ("Related Patents") all claim priority to U.S. Provisional Application 60/661,763.

200.    The Patents-in-Suit claim priority to U.S. Provisional Application 60/661,763.

201.    The Named Inventors and Prosecution Counsel committed inequitable conduct when prosecuting at least the '814 patent.

202.    The '814 patent issued due to the Named Inventors and Prosecution Counsel's inequitable conduct.

203.    The Related Patents were filed after the '814 patent issued.

204.    The Related Patents all claim priority to the '814 patent.

205.    The Named Inventors and Prosecution Counsel never cured any inequitable conduct that occurred during the prosecution of the '814 patent.

206.    The Related Patents would not have issued but-for the Named Inventors and Prosecution Counsel's inequitable conduct.

207.    The inequitable conduct that allowed the Patents-in-Suit to issue has an immediate and necessary relation to the Related Patents because but-for the inequitable conduct the Related Patents would not have issued.

208.    The claims of the Related Patents are unenforceable because Ozmo failed to disclose the material information discussed above during prosecution of the Patents-in-Suit Family.

**An Actual and Justiciable Controversy Exists Between Ozmo and TCL**

209.    Pursuant to 28 U.S.C. § 2201(a), an actual and justiciable controversy has arisen and exists between Counterclaim-Plaintiffs and Ozmo. Counterclaim-Plaintiffs are entitled to a judicial determination and declaration that they have not infringed and are not infringing the Patents-in-Suit, that the Patents-in-Suit are invalid, and that the Patents-in-Suit are unenforceable.

**COUNT I**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '991 PATENT**

210.    Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

211.    Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '991 patent.

212.    Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '991 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

213.    A real, immediate, and justiciable controversy exists between Ozmo and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '991 patent.

214.    Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and have not infringed, either directly or

indirectly, any valid and enforceable claim of the '991 patent, either literally or under the doctrine of equivalents.

## COUNT II

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '991 PATENT

215.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

216.     Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '991 patent.

217.     Counterclaim-Plaintiffs allege that the claims of the '991 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 102, 103, and/or 112.

218.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Ozmo regarding, inter alia, the validity of the claims of the '991 patent.

219.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 1, of the '991 patent are invalid.

## COUNT III

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '991 PATENT

220.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

221.     The claims of Ozmo's asserted '991 Patent are unenforceable due to inequitable conduct in the '991 Patent's prosecution, including because Ozmo failed to disclose the material information discussed above.

222.     The claims of Ozmo's asserted '991 Patent are unenforceable due to inequitable conduct in the prosecution of the Patents-in-Suit Family under the doctrine of infectious

unenforceability, including because Ozmo failed to disclose the material information discussed above during prosecution of the Patents-in-Suit Family.

223.    But for Ozmo's intentional non-disclosure of the material information discussed above, the claims of the '991 Patent would not have issued because it invalidates those claims as discussed above.

224.    As set forth above, an actual and justiciable controversy exists between TCL and Ozmo as to the enforceability of the '991 Patent, and a judgment of unenforceability is necessary and appropriate at this time.

225.    TCL is entitled to a judgment that the claims of the '991 Patent are unenforceable due to Ozmo's inequitable conduct.

## COUNT IV

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '906 PATENT

226.    Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

227.    Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '906 patent.

228.    Counterclaim-Plaintiffs have not infringed and is not infringing any valid and enforceable claim of the '906 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

229.    A real, immediate, and justiciable controversy exists between Ozmo and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '906 patent.

230.    Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and have not infringed, either directly or indirectly, any valid and enforceable claim of the '906 patent, either literally or under the doctrine of equivalents.

## COUNT V

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '906 PATENT

231.    Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

232.    Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '906 patent.

233.    Counterclaim-Plaintiffs allege that the claims of the '906 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 102, 103, and/or 112.

234.    A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Ozmo regarding, inter alia, the validity of the claims of the '906 patent.

235.    Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 4, of the '906 patent are invalid.

## COUNT VI

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '906 PATENT

236.    Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

237.    The claims of Ozmo's asserted '906 Patent are unenforceable due to inequitable conduct in the '906 Patent's prosecution, including because Ozmo failed to disclose the material information discussed above.

238.    The claims of Ozmo's asserted '906 Patent are unenforceable due to inequitable conduct in the prosecution of the Patents-in-Suit Family under the doctrine of infectious unenforceability, including because Ozmo failed to disclose the material information discussed above during prosecution of the Patents-in-Suit Family.

239.    But for Ozmo's intentional non-disclosure of the material information discussed above, the claims of the '906 Patent would not have issued because it invalidates those claims as discussed above.

240.    As set forth above, an actual and justiciable controversy exists between TCL and Ozmo as to the enforceability of the '906 Patent, and a judgment of unenforceability is necessary and appropriate at this time.

241.    TCL is entitled to a judgment that the claims of the '906 Patent are unenforceable due to Ozmo's inequitable conduct.

## COUNT VII

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '814 PATENT

242.    Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

243.    Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '814 patent.

244.    Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '814 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

245.    A real, immediate, and justiciable controversy exists between Ozmo and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '814 patent.

246.    Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and have not infringed, either directly or indirectly, any valid and enforceable claim of the '814 patent, either literally or under the doctrine of equivalents.

## COUNT VIII

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '814 PATENT

247.    Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

248.    Ozmo has brought claims against Counterclaim-Plaintiffs' alleging infringement of at least one claim of the '814 patent.

249.    Counterclaim-Plaintiffs allege that the claims of the '814 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 102, 103, and/or 112.

250.    A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Ozmo regarding, inter alia, the validity of the claims of the '814 patent.

251.    Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 1, of the '814 patent are invalid.

## COUNT IX

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '814 PATENT

252.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

253.     The claims of Ozmo's asserted '814 Patent are unenforceable due to inequitable conduct in the '814 Patent's prosecution, including because Ozmo failed to disclose the material information discussed above.

254.     The claims of Ozmo's asserted '814 Patent are unenforceable due to inequitable conduct in the prosecution of the Patents-in-Suit Family under the doctrine of infectious unenforceability, including because Ozmo failed to disclose the material information discussed above during prosecution of the Patents-in-Suit Family.

255.     But for Ozmo's intentional non-disclosure of the material information discussed above, the claims of the '814 Patent would not have issued because it invalidates those claims as discussed above.

256.     As set forth above, an actual and justiciable controversy exists between TCL and Ozmo as to the enforceability of the '814 Patent, and a judgment of unenforceability is necessary and appropriate at this time.

257.     TCL is entitled to a judgment that the claims of the '814 Patent are unenforceable due to Ozmo's inequitable conduct.

## COUNT X

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '934 PATENT

258.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

259.     Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '934 patent.

260.     Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '934 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

261.     A real, immediate, and justiciable controversy exists between Ozmo and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '934 patent.

262.     Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid and enforceable claim of the '934 patent, either literally or under the doctrine of equivalents.

## COUNT XI

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '934 PATENT

263.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

264.     Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '934 patent.

265.     Counterclaim-Plaintiffs allege that the claims of the '934 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 102, 103, and/or 112.

266.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Ozmo regarding, inter alia, the validity of the claims of the '934 patent.

267.    Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 4, of the '934 patent are invalid.

## COUNT XII

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '934 PATENT

268.    Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

269.    The claims of Ozmo's asserted '934 Patent are unenforceable due to inequitable conduct in the '934 Patent's prosecution, including because Ozmo failed to disclose the material information discussed above.

270.    The claims of Ozmo's asserted '934 Patent are unenforceable due to inequitable conduct in the prosecution of the Patents-in-Suit Family under the doctrine of infectious unenforceability, including because Ozmo failed to disclose the material information discussed above during prosecution of the Patents-in-Suit Family.

271.    But for Ozmo's intentional non-disclosure of the material information discussed above, the claims of the '934 Patent would not have issued because it invalidates those claims as discussed above.

272.    As set forth above, an actual and justiciable controversy exists between TCL and Ozmo as to the enforceability of the '934 Patent, and a judgment of unenforceability is necessary and appropriate at this time.

273.    TCL is entitled to a judgment that the claims of the '934 Patent are unenforceable due to Ozmo's inequitable conduct.

## COUNT XIII

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '504 PATENT

274.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

275.     Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '504 patent.

276.     Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '504 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

277.     A real, immediate, and justiciable controversy exists between Ozmo and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '504 patent.

278.     Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid and enforceable claim of the '504 patent, either literally or under the doctrine of equivalents.

## COUNT XIV

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '504 PATENT

279.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–209 as if fully set forth herein.

280.     Ozmo has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '504 patent.

281.     Counterclaim-Plaintiffs allege that the claims of the '504 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 102, 103, and/or 112.

282.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Ozmo regarding, inter alia, the validity of the claims of the '504 patent.

283.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 7, of the '504 patent are invalid.

## COUNT XV

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '504 PATENT

284.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–209 as if fully set forth herein.

285.     The claims of Ozmo's asserted '504 Patent are unenforceable due to inequitable conduct in the '504 Patent's prosecution, including because Ozmo failed to disclose the material information discussed above.

286.     The claims of Ozmo's asserted '504 Patent are unenforceable due to inequitable conduct in the prosecution of the Patents-in-Suit Family under the doctrine of infectious unenforceability, including because Ozmo failed to disclose the material information discussed above during prosecution of the Patents-in-Suit Family.

287.     But for Ozmo's intentional non-disclosure of the material information discussed above, the claims of the '504 Patent would not have issued because it invalidates those claims as discussed above.

288.    As set forth above, an actual and justiciable controversy exists between TCL and Ozmo as to the enforceability of the '504 Patent, and a judgment of unenforceability is necessary and appropriate at this time.

289.    TCL is entitled to a judgment that the claims of the '504 Patent are unenforceable due to Ozmo's inequitable conduct.

### ATTORNEYS' FEES

This is an exceptional case entitling Counterclaim-Plaintiffs to an award of their attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaim-Plaintiffs hereby respectfully request a jury trial on all issues and claims so triable, and an advisory jury on all other issues and claims.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiffs request the following judgments and seek the following relief:

(i)     That all claims against Counterclaim-Plaintiffs be dismissed with prejudice and that all relief requested by Ozmo be denied;

(ii)    That a judgment be entered declaring that Counterclaim-Plaintiffs have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(iii)   That a judgment be entered declaring that the claims of the Patents-in-Suit are invalid for failure to comply with the statutory provisions of Title 35 of

the United States Code, including without limitation, one or more of §§ 102, 103, and/or 112;

(iv)    That a judgment be entered declaring that the Patents-in-Suit, and the Related Patents, are unenforceable due to inequitable conduct;

(v)    An award of Counterclaim-Plaintiffs' costs as the prevailing party;

(vi)    That a judgment be entered declaring that this case is exceptional under 35 U.S.C. § 285, and accordingly that Counterclaim-Plaintiffs are entitled to recover reasonable attorneys' fees in this action; and

(vii)    That Counterclaim-Plaintiffs be awarded such other relief that the Court deems just and proper.

Dated: May 31, 2024

Respectfully submitted,

*/s/ Kat Li*

Kat Li
Texas State Bar No. 24070142
kat.li@kirkland.com
Julie Metkus (admitted *pro hac vice*)
Texas State Bar No. 24134535
julie.metkus@kirkland.com
Michael T. Dinnella
Texas State Bar No. 24136809
michael.dinnella@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Tel: (512) 678-9100


Russell E. Levine, P.C. (admitted in W.D. Tex.)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
russell.levine@kirkland.com

*Attorneys for Defendants and Counterclaim Plaintiffs TCL Electronics Holdings Ltd., and TCL Industries Holdings Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic email on May 31, 2024.

<u>*/s/ Kat Li*                                        </u>
Kat Li